**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **HAYDE VELASQUEZ,** | § | |
| | § | |
| Plaintiff | § | **CIVIL ACTION NO. 4: 20-cv-3036** |
| | § | |
| Vs. | § | |
| | § | |
| | § | |
| **UNITED AIRLINES, INC.** | § | |
| | § | |
| Defendant | § | **(JURY TRIAL DEMANDED)** |
| | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Hayde Velasquez ("Plaintiff" or "Ms. Velasquez"), filing this her Original Complaint against Defendant United Airlines, Inc. ("Defendant" or "UA"), wherein she describes the unlawful employment practices Defendant subjected her to during her employment based on her gender (female) and pregnancy, and retaliation. In support of her causes of action, Ms. Velasquez respectfully shows the Court as follows:

**I.   JURISDICTION, PARTIES, AND VENUE**

1. This Court has jurisdiction over the causes of action alleged by Plaintiff pursuant to 28 U.S.C. §1331, 42 USC 2000e(k), Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of ("Title VII"), and the anti-retaliation regulations set forth by Title VII.

2. Plaintiff, Hayde Velasquez is and was an employee as defined by Title VII and the PDA at all times relevant to the facts and causes of action stated herein.

3. Defendant, United Airlines, is a corporation operating in Texas and was at all times, relevant to the facts and claims in this Original Complaint, Ms. Velasquez's private-sector employer within the meaning of Title VII and the PDA.

4. Plaintiff will serve Defendant by and through its registered agent for service. CT Corporation System, 1999 Bryan St., Ste. 900 Dallas, TX 75201-3136.

5. Defendants engaged in an industry affecting commerce and employed more than fifteen (15) regular employees.

6. The employment practices alleged to be unlawful herein were committed within the Southern District of Texas, Houston Division.  Venue is appropriate in this Court.

VICARIOUS LIABILITY--RESPONDEAT SUPERIOR

7. Whenever in this pleading it is alleged that Defendant did any act or thing, or failed to do any act or thing, it is meant that Defendant's officers, owners, servants, employees, or representatives and management including, but not limited to T. Leopard, T. Gomez, R. Worrell, G. Burkhalter, B. Bienvenido, R. Fulmore and/or E. Syed did such act or thing, or failed to do such act or thing, or that such act or thing or omission was done in the course and scope of that person's employment at UA, or in the furtherance of Defendant UA's interests, or with the full authorization, permission, tolerance, and/or ratification of Defendant, or was done by an authorized member of management of Defendant or was done in the normal routine of the accepted, tolerated, or permitted conduct, customs, and/or practices of Defendant's officers, owners, servants, employees, management and/or representatives.

## II.  EXHAUSTION OF ADMINSTRATITIVE REMEDIES

8. Ms Velasquez filed an original Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") on or about October 31, 2019 wherein she averred that Defendant engaged in gender and pregnancy discrimination

against her and retaliated against her because of her accommodation-requests related to her pregnancy and childbirth. The EEOC assigned Ms Velasquez Charge the No. 460-2020-00602.

9. After investigation of Ms Velasquez charge, the EEOC issued her a Right-to-Sue letter on or about July 8, 2020. Ms Velasquez timely filed her Original Complaint on August 28, 2020.

### III.     FACTUAL BACKGROUND

10. In January 2006, Ms. Velasquez started her employment with United Airlines in its catering department. Throughout the course of her employment with UA, she received various promotions and job changes.

11. In early 2018, Ms. Velasquez discovered she was pregnant. During this time, she was working at UA's warehousing and distribution center and she was directly supervised by T. Leopard and T. Gomez. After discovering she was pregnant, on or about May 16, 2018, Ms. Velasquez requested information via email from one of her senior managers (Ms. Bienvenido) about maternity-leave options.

12. Ms. Velasquez told Bienvenido that she was pregnant and that she was carrying twins. When Bienvenido responded to Ms. Velasquez's email, she included Supervisor R. Worrell in her email response about maternity options for Ms. Velasquez. Further, although Ms. Velasquez had not yet told her direct supervisors (Gomez and Leopard) she was pregnant, after Bienvenido and Worrell learned that she was pregnant, her direct supervisor Leopard said to her, "*When did you get pregnant? When did you get a man?*" and started laughing.

13. Ms. Velasquez was humiliated. Over the next week, she also began to notice that Leopard and Gomez were both giving her especially difficult jobs that required heavy lifting in the outdoor heat and sun.

14. Because of Ms. Velasquez's pregnancy, however, some of her coworkers would offer

to switch their assignments with Ms. Velasquez and take heavy-lifting assignments given to Ms. Velasquez (a practice which had always been allowed in the warehouse department), but after Leopard and Gomez learned that she was pregnant, they refused to allow Ms. Velasquez's coworkers to switch heavy-lifting assignments with her.

15. Additionally, although UA's employee-rules and/or agreement with its union employees (like Ms. Velasquez) provide for various breaks throughout the day, after Gomez learned that Ms. Velasquez was pregnant, he would begin yelling at her that she should return to work whenever he saw Ms. Velasquez on break. In response, Ms. Velasquez tried to explain to him that his yelling was stressful for her and that she was pregnant and trying to eat well for the sake of a healthy baby and pregnancy; and that she needed the allotted break.

16. Gomez, however, did not care and continued to yell at her each time he saw her on break. This was everyday that Gomez and Ms. Velasquez worked together beginning in early June 2018.

17. Leopard and Gomez's harassing conduct toward Ms. Velasquez became so unbearable that she decided to take her complaints about their behavior to UA's attention because she knew it was wrong. As such, Ms. Velasquez and her union representative set up a meeting with management to report Gomez and Leopard's repeated harassment of her ever since they discovered she was pregnant. Ms. Velasquez made this complaint directly to management in a meeting with her union representative (K. Davis) in mid-June 2018, which included G. Burkhalter, B. Bienvenido, E. Syed, and, T. Gomez.

18. Despite Ms. Velasquez's complaint, nothing changed.

19. On June 30, 2018, in the midst of Gomez again yelling at and chastising Ms. Velasquez while she was on break, Ms. Velasquez had an anxiety attack. Unable to calm down on her own, a

co-worker called an ambulance and Ms. Velasquez was taken to the Emergency Room from work by ambulance.

20. Ms. Velasquez was able to return to work on July 3, 2018. When back at work, she went to Manager Bienvenido to again complain about Gomez's harassment. Ms. Velasquez specifically told Bienvenido that Gomez 's harassment had this time sent her to the hospital and endangered her pregnancy.

21. Manager Bienvenido did not care to hear Ms. Velasquez's complaint and told her, "*I am tired of getting employee complaints about Gomez.*" Ms. Velasquez, however, did not want to lose her babies or continue being harassed and again asked that Gomez 's behavior be addressed and stopped.

22. In response, on or about July 6, 2018, Emad Syed (department head) emailed Ms. Velasquez, Gomez, HR and Manager Bienvenido and asked that they have a meeting concerning the June 30th incident.

23. During the meeting, Ms. Velasquez reiterated Gomez and Leopard's harassment to management. Ms. Velasquez told them that Gomez's yelling was causing her undue stress and pregnancy complications. She told them that Gomez and Leopard were giving her difficult, lifting jobs and would not allow anyone to help her. Ms. Velasquez told them this behavior only worsened after her first complaint in June and that she had ended up in the emergency room on June 30th. At that time, Ms. Velasquez also provided management with a doctor's note setting forth physical limitations based on her pregnancy.

24. Despite this meeting, nothing changed. In fact, on July 31, 2018, Ms. Velasquez received an email from Leopard sent to all employees complaining and reprimanding employees about taking breaks. Ms. Velasquez believed the email was targeted at her and was a result of her

complaints.

25. Worst, Leopard and Gomez continued to yell at Ms. Velasquez, make work difficult for her, give her difficult jobs, and harass her about taking breaks. As this was all happening, Ms. Velasquez had also started having complications arise with her pregnancy. Her doctor told her it was because of the work stress she was complaining to her doctor about as well.

26. For this reason, when Gomez would yell at Ms. Velasquez at work, she repeatedly asked him to please stop as she feared for her babies' safe and healthy pregnancy. Gomez ignored Ms. Velasquez's pleas and continued his harassing behavior.

27. On August 28, 2019, Ms. Velasquez felt so horrible at work that she felt like she could not make it through the day and that she needed to leave work early.

28. Still feeling ill, Ms. Velasquez went to the doctor the next day on August 29, 2018. Upon arrival, Ms. Velasquez's doctor found that her blood pressure was so high that he believed that her life was in danger. He told Ms. Velasquez that she was in danger of going into a coma and would not allow her to leave the hospital.

29. Ms. Velasquez was immediately transferred by ambulance to a hospital. She and her babies were given around-the-clock care. Despite the care her doctors provided, on September 1, 2018 one of Ms. Velasquez's babies died.

30. Ms. Velasquez was able to deliver the surviving twin on September 26, 2018, but he was premature and suffered serious medical issues.

31. When Ms. Velasquez informed UA of her tragedy, UA showed little to no sympathy. Instead, UA was primarily concerned with Ms. Velasquez's leave and leave eligibility.

32. On December 20, 2018, Ms. Velasquez made another formal complaint to UA Airlines about the harassment that Gomez and Leopard had subjected her to since finding out she was pregnant

in late-May 2018. In her December 20th complaint Ms. Velasquez told UA that after her first complaint in June 2018, Gomez's harassment of her only got worse. Ms. Velasquez told UA that Gomez openly retaliated against her and no one did anything to stop him; and now her baby had died.

33. Upon information and belief, Gomez and Leopard's harassment contributed in whole or in part to the death of Ms. Velasquez's baby on September 1, 2018.

34. In response, UA said they would "investigate" Ms. Velasquez's complaints.

35. On January 17, 2019, Ms. Velasquez returned to her job. When she returned to her job, Ms. Velasquez immediately began to face issues at UA because there was no dedicated place for her to express her breast milk.

36. After suffering under these conditions for almost three months, on March 5, 2019 E. Syed told Ms. Velasquez that UA was not obligated to provide her with a place for breastfeeding but that she could use the restroom. Alternatively, he told her she could clock-out and use a nursing room in the airport terminal or use a training/conference room which had no sink and was not in any way sanitized for lactation.

37. Given basically no options, Ms. Velasquez decided that she could only breastfeed her baby before and after work because it was too hard for her to go to the terminal that was a 10-minute drive from her work station, including time to look for parking, pay for parking, go through TSA and walk the distance to the breastfeeding area. She would also lose pay by having to clock out to go to the terminal.

38. On April 1, 2019, Ms. Velasquez alerted management that both Gomez and Leopard were in her new work area just looking at her and whispering. They were not supposed to be there and Ms. Velasquez was scared, intimidated, and very very uncomfortable. After the extreme harassment and retaliation Ms. Velasquez had already faced Gomez and Leopard, the loss of her baby,

and her complaint notifying UA, Ms. Velasquez felt it unreasonable and retaliatory that UA would allow Gomez and Leopard to be casually sitting next to her desk looking at her and intimidating her.

39. In approximately May or June 2019, Gomez unexpectantly died while at work.

40. **Six** months after her December 20th complaint, on June 21, 2019, UA told Ms. Velasquez that their investigation was complete and that they had been able to **substantiate** a violation of their Working Together Guidelines had occurred. UA did not tell her anything more. Leopard continued to maintain a supervisory role.

41. Ms. Velasquez bringing suit against UA because of the horrific hostile work environment she was subjected to at UA based on her pregnancy beginning in May 2018, and continuing through March 2019 when she was forced to give up breastfeeding at work because reasonable accommodations were refused.

42. Ms. Velasquez believes that she has been discriminated against by UA in violation of the Pregnancy Discrimination Act of Title VII and the Title VII of the Civil Rights Act based on her gender and pregnancy. She further believes that she was retaliated against based on her complaints of pregnancy discrimination by further and increased intentional harassment and then, when she returned to work, the refusal to provide her with a reasonable breastfeeding area.

## IV. CAUSES OF ACTION

### A. WRONGFUL DEATH

43. Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

44. Plaintiff, brings this wrongful death claim on her own behalf because of the suffering, loss, injuries and damages flowing from the premature and unexpected death of her unborn child. Plaintiff asserts that she has been irreparably damaged by the wrongful taking of a child. Plaintiff

seeks recovery of all compensable damages allowed at law against Defendant.

### B. Negligent Hiring, Supervision, Retention and Training

45. Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

46. Defendant had a legal duty to hire, supervise, retain and/or train competent employees.

47. Defendant breached that duty by negligently hiring, supervising, training and/or retaining managers and employees including Gomez and Leopard as described herein.

48. Defendant did not properly evaluate, investigate, or take any reasonable steps to determine whether its employees, including Gomez and Leopard were unfit, incompetent or a danger to third parties. Defendant's failure to exercise reasonable care in the hiring, supervising, training and retaining of employees, including Gomez and Leopard, was a proximate cause of damages to Plaintiff and her unborn child.

49. Defendant did not properly take reasonable steps to adequately supervise its employees including Gomez and Leopard. Defendant's failure to exercise reasonable care in the supervising of its employees was a proximate cause of damages to Plaintiff.

50. Defendant has a legal duty to use ordinary care in retaining its employees by remaining knowledgeable about the employee's competence and fitness. Defendant knew or should have known that the continued employment of Gomez and Leopard, among others, would create an unreasonable risk of harm to others. Defendant's failure to exercise reasonable care in retaining Gomez and Leopard, among others, as employees was a proximate cause of damages to Plaintiff.

51. Defendant knew or should have known that it had not properly trained Gomez and Leopard, among others, in the performance of their employment duties. Defendant's failure to properly train Gomez and Leopard, among others, was a proximate cause of damages to Plaintiff.

52. Defendant's breaches proximately caused Plaintiff's injuries.

### C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

53. Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth

54. Through the outrageous conduct described above, Defendant acted with the intent to cause, or with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress.

55. As a direct and proximate result of Defendant's actions, Plaintiff suffered severe emotional distress, including but not limited to depression, anxiety, highly unpleasant mental reactions such as horror, grief, shame, humiliation, embarrassment, anger, chagrin, etc. The distress inflicted upon Plaintiff is so severe that no reasonable person could be expected to endure the intolerable atmosphere created and maintained by Defendant without undergoing unreasonable suffering. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

56. Defendant's conduct as described herein was malicious and oppressive, and done with a conscious disregard of Plaintiff's rights. Defendant authorized, condoned and ratified the unlawful conduct complained of in this action.

### D. DISCRIMINATION AND RETALIATION UNDER TITLE VII (gender/pregnancy)

57. Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

58. Defendants, through its agents, supervisors, or employees violated Plaintiff's civil rights in violation of Title VII, by intentionally interfering with Plaintiff's performance of her

employment because of her gender – female and because of her pregnancy and her pregnancy conditions.

59. This intentional interference consisted of discrimination of a continuous nature.

60. Defendants, through its agents, supervisors, or employees discriminated against Plaintiff which led to the loss and impairment in whole or part, of the wages, benefits, promotions, privileges, and terms and conditions of Plaintiff's employment.

61. Defendant's actions were severe and pervasive and altered Plaintiff's work environment. Defendant did not treat and subject individuals outside of Plaintiff's protected class to the hostile work environment and harassment to which Defendant subjected Plaintiff.

62. The above-described acts on Defendant's part caused Plaintiff a hostile work environment and substantial injury and damage.

## V. DAMAGES

63. Defendant's conduct constitutes violations of statutory and/or common law. Such unlawful conduct seriously affects Plaintiff in her occupation, trade and business.

64. Because of Defendant's conduct, Plaintiff has suffered, suffers, and will continue to suffer economic losses including past and future lost wages and benefits as well as humiliation, mental anxiety and stress, and other damages. Accordingly, Plaintiff seeks all general, special, incidental, and consequential damages all of which amounts to be proved at trial.

65. Plaintiff has suffered direct injury as a proximate result of the unlawful practices, policies and procedures of Defendant. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages in an amount to be proved at trial.

66. Because of Defendant's unlawful and tortious conduct, it has been necessary for Plaintiff to retain the undersigned attorney to represent her in these causes of action Plaintiff has agreed to pay

her attorney reasonable attorney's fees for the preparation and trial of these causes, and further for any appeal thereof should same become necessary.

67. Additionally, Plaintiff has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve her ability to earn a living. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages as shall be proven at trial.

68. Further, Plaintiff seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendant. Plaintiff also seeks post-judgment interest at the maximum rate allowed by law in the event that Defendant does not promptly tender damages assessed against it and to avoid unjustly enriching Defendant.

## VI.   JURY DEMAND

69.   Plaintiff requests that this action be heard before a jury.

## VII.   PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

a. Permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant from engaging in any employment practice which discriminates on the basis of gender, pregnancy or protected activity.

b. All damages to which Plaintiff may be entitled pursuant to this Complaint, or any other amendment(s) thereto, including but not limited to earnings in the past, earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c. Compensatory damages for pain and mental suffering in the past and future;

d. Punitive damages in an amount above the minimum jurisdictional limit of the Court;

e. Reasonable attorney's fees, with conditional awards in the event of appeal;

f. Pre-judgment interest at the highest rate permitted by law;

g.      Post-judgment interest from the judgment until paid at the highest rate permitted by law;

h.      Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

i.      Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Complaint or by any amendment hereto.

Respectfully submitted,

/s/ *Marjorie A. Murphy*
Marjorie A. Murphy
Federal Bar No. 34512
The Murphy Law Practice, PLLC
3355 W. Alabama, Ste. 670
Houston, Texas 77098
Telephone: (832) 564-3804
Facsimile: (832) 553-7441
Email: marjorie@themurphylawpractice.com
**ATTORNEY FOR PLAINTIFF,**
**HAYDE VELASQUEZ**

## CERTIFICATE OF SERVICE

I hereby certify that on this August 28, 2020, this instrument was filed pursuant to the electronic filing protocols applicable in the United States District Court for the Southern District of Texas, Houston Division.

/s/ *Marjorie A. Murphy*
Marjorie A. Murphy